Proceed. Good morning. May it please the court as an initial matter Introduce yourself for the record. Yes. My name is Beidad Tadeghi. I represent Sheila Cruz, Catherine Silas, and Deborah Esperanza and they're the appellants. As an initial matter we brought a small demonstrative which I may or may not use We've all seen it. Or at least small copies of it. It's a development of SER 38 which is the Bud Light Limerida box This appeal is about whether the use of the term light on the Bud Light Limerida products can plausibly be misleading. The district court improperly found on the pleadings and without any evidence that no reasonable consumer could be deceived by the term light when the maker does not make a specific full calorie version of the product to which it can be reasonably compared. Well that's actually an interesting question here as to what is the comparator product because as you've just shown us and as we all have known from the record what's on the box, the carton, is a picture of what looks like a margarita and it's all about give your margarita a twist and this is the margarita with a twist. So why isn't the comparator product an ordinary margarita as to which this has fewer calories? And then part two of that is why isn't the comparative a hypothetical margarita involving the full strength Bud which isn't made but you're just being advised that this is made with Bud Light rather than Bud? Well the reason why... You should address Judge Graber's question first. I'm sorry can you repeat that? The question is why isn't the comparator beverage an ordinary margarita which has about twice as many calories as this product? Your Honor the specific instance in this case is that they utilize the Bud Light label. Bud Light has a connotation of being lower in calories. But the representation of that box as a whole isn't about light it's about margaritas. This is a margarita but it's a margarita with a twist whatever that means. Is this a margarita? Isn't this a malt beverage? This is a malt beverage. Correct but in terms of what a reasonable consumer expects in terms of calorie content which is your whole claim here. It seems to me that the label is urging you to compare this if it's urging you to do anything with a margarita. I guess the question is whether that is the only plausible interpretation of what you're seeing. I think that's a plausible argument that could be made but equally plausible and based on the fact that Bud Light has an actual connotation it has a meaning. Anheuser-Busch has recognized that and they marketed this product as being Bud Light as we noted in the complaint specifically because of the popularity of the Bud Light brand. Do you think Bud Light is the comparison? Here's what I think. There's Budweiser right? There's Bud Light. There's Bud Light Lime. Who knew? There's Bud Light Lime-arita and there's Bud Light Lime-arita Splash. Yes? And this box that we're all looking at says Bud Light Lime Lime-arita Margarita with a twist and it's not a margarita? It's beer right? That's my understanding yes and it's a certain flavor of beer. It's a margarita flavored beer. I just get a headache thinking about it so let's just focus on, it says Bud Light Lime and is Bud Light Lime an ingredient to Bud Light Lime-arita? That's a little unclear from the record as to whether it's a separately brewed malt beverage or whether it uses Bud Light. Is Bud Light Lime in there? That's our question. I would assume it has Bud Light. We don't really know how much it has in it but presumably because it has the Bud Light Lime label very prominently on the box. Can I go to the store and buy Bud Light Lime? That's another product right? That's a different product yes. So why isn't the comparison Bud Light Lime? It could be potentially Bud Light Lime but this has I think twice as many calories as we put in the complaint than Bud Light Lime. The Bud Light label there is the regular logo for Bud Light right? No it's Bud Light Lime's regular label right? I think it's essentially the same thing. It's Bud Light Lime. Bud Light has their own label and then they make a product called Bud Light Lime as well. Does it matter? And now they're making another product called Bud Light Lime-arita and they use the same Bud Light moniker on all of that. And the reason they use the same Bud Light moniker is that that has meaning to people. And the meaning it has to people as we put in the complaint which we argue was a plausible interpretation of that label was that it was a product that was light in some way. And in some way we mean the lower version than something. Can I just finish this up? Bud Light Lime-arita is between 24 and 27 calories per ounce right? I think that's correct. Okay and whether we're comparing it to Bud, Bud Light, or Bud Light Lime all of those have between 9.17 and 12.08 calories per ounce. This has a lot more calories per ounce whether the comparison is Bud, Bud Light, or Bud Light Lime. Isn't that right? That's right. What is the comparison to a margarita per ounce? What is the comparison to a margarita per ounce? I don't recall but I believe it's equivalent to any sort of or more than. It's about half of what a regular margarita made with alcohol, a non-beer related actual margarita. This has about half the calories of that. The difference is that that's just a margarita. It's not a light product per se. We've sort of gotten lost from Judge Bybee's question which I think is potentially a helpful one which is, is Bud Light Lime or Bud Light without lime an ingredient or part of the mix that makes up this product? We haven't really gotten to the point of discovery to know exactly what combination of what it comprises essentially. Is it 60% Bud Light Lime? Is it 20%? Is it 10%? If it's an ingredient, how can it be misleading? That goes to the plausibility of how the labeling is interpreted. Again, we've pled and we believe it's plausible that someone would see the Bud Light Lime label and interpret that as being a light beverage because light has, as the district court recognized, light has meaning. Light means lower than. I think you'd be on much, much stronger ground, as Judge Graber suggests, if there was no Bud Light in here. But you haven't alleged that, have you? I guess I don't understand why that would be the case, Your Honor. Well, if it says Bud Light on it, then you assume that it's got some kind of a Bud Light product, which is different from a Budweiser product, labeled product. I understand that Anheuser-Busch is the parent company here. But you would expect that it would have some kind of Bud Light. If it doesn't have Bud Light, then I think you've got a more serious mislabeling problem. Well, I think the issue of whether the beverage is light in and of itself and the issue of whether it has Bud Light in it are not necessarily mutually exclusive. I think it can have Bud Light in it and still be misleading, to the extent that people are interpreting it plausibly as being a beverage that is light in some way, that is lower. Well, in some way it includes having Bud Light as an ingredient. If it's a Bud Light XYZ, then if it has Bud Light in it and it adds a bunch of other weird stuff. Are you suggesting that people may think that it's just beer? No, I'm suggesting that they think that this is a beverage that is light, lighter than some counterpart beverage. And the problem here is that there is no counterpart beverage. Well, that's what we're struggling with. The one counterpart beverage, I guess, is the Splash, which isn't talked about much, which is sort of a lower-calorie version of this, as I take it. But that's why I was asking you about whether that label points you to compare it to an actual margarita, even though this is beer. It's like, if you like margaritas, this is a lower-calorie version of that. Have at it. And that's true. Well, the way it's labeled is as a malt beverage. My understanding is that a malt beverage is not a margarita. I don't see malt beverage on the cardboard box. What I see is a margarita glass, not a beer glass. And they're pouring a beer over ice cubes for some reason. It looks like a margarita. Right, and it's notable that what's coming out of the can looks more like beer than a margarita. It's green. It's darker in color. Where does it say malt beverage on the box? It doesn't say that on the box, but it does say that on the can. It says malt beverage, margarita-flavored malt beverage. But I think what you've said is that if you go forward, your class is folks who, you're going to just be looking at the box. Right. We originally pled the largest possible class, depending on how the evidence comes out or not. But we think the minimum class, at a very minimum, would be the purchasers of the box. And the reason for that is that on the box, there was no indication of any sort of calorie content at all. And under Gerber v. Williams, that is essentially misleading. Counsel, before you use up all your time, would you turn to the safe harbor question? Yes, certainly. As we know, to forestall any sort of action under California consumer protection laws, defendants must show that the conduct complained of is clearly permitted by legislation under the CELTEC decision. The scope of the law has been expanded somewhat under Davis to include regulations. So is California's safe harbor provision identical to a preemption argument? Is it just related to a preemption argument? Greater than, less than? Under the Von Kaning decision, the court determined that it was somewhat, it was equivalent in terms of the standard that should be used. They said that if an agency action has the force of preemption, it is sufficient to trigger the safe harbor doctrine under California. So as I'm looking at 27 U.S.C. 205, we have an unfair competition and unfair practices. Unfair competition sounds very much like the lawsuit that you brought. Yes. And that's the title of this section. Yes. It is unlawful. And then we go to E. We have very, very detailed provisions dealing with labeling, labeling and conformity with such regulations. You can't have deception of the consumer. And then there's a whole bunch of details of that. The Treasury Department has adopted regulations that provide for a certificate of label and a process for doing that. And they have provided a remedy for third-party folks like your plaintiffs who don't think that the label accurately represents what's in the bottle. Did you take that remedy? Your Honor, we don't believe that it was a remedy. Did you take the remedy? We did not. But we don't believe it was a remedy. And the reason for that is that it only provides, the only remedy that's available to third parties is that they may provide a comment to the TTB about whether or not they believe that the COLA was issued. Well, it's more than that. This is not just simply a right to participate, but it looks like it's actually a right to petition and that the TTB will respond to the petition. I don't think that it's clear that the TTB has any obligations to respond at all. I think if they agree with the, it seems from the regulation, I think it was 13 point. Well, this is 13.62. And it's when we wish to comment on an approved certificate of label approval. So it's not in process. This is not like sort of a notice and comment where you get the right to come and participate in the rulemaking. But that's exactly the problem, right? Because before the certificate of label approval is approved, there should be an opportunity for notice and comment rulemaking. And that's the necessity to provide the certificate of label approval with the necessary force of law to trigger the Safe Harbor Act in the first place. The fact that they do only almost a discretionary comment period only after the label has been approved with no apparent recourse or procedure for how that comment should be dealt with or whether it needs to be dealt with. If it's not accepted, there's no right of action, as I understand. That's correct, yeah. But with respect to the COLAs, what's important is that we look at the specific procedures. I'm sorry. I want to follow up on Judge Graber's comment. So is it clear that there is no right under the APA to challenge a TTB decision not to take action? There's no apparent recourse for someone who... Okay. Is there something that bars APA review? Not that I know of. Not that I'm aware of. Okay. So as far as you know, then, if you went to the TTB, filed a third-party comment in accordance with 27 CFR 1362, and the TTB said everything's okay, they're doing exactly what we told them they could do, that you can't, you couldn't take an appeal from that under the APA? We believe that that would be certainly challengeable because the procedures that the TTB has set up for the COLA process we don't believe conforms to the requirements of the APA. It doesn't conform with any of the formal requirements that are necessary for that. That would be a separate APA challenge. I'm asking actually something very specific. That is, if you went into the TTB and said Bud Light, Lime-A-Rita is mislabeled and it's causing deception among consumers like these folks, and we would like you to, you know, order them to change their labeling, and if TTB came back and said either, one, this is outside of our jurisdiction, which I think then would allow you to come back in maybe under California, or it says, no, we don't think that appropriate action is required here, we think that they're doing exactly, we knew exactly what they were doing and it's not deceptive, then wouldn't you have an APA remedy from that decision? I think you would, but the question is whether, the specific question at issue is whether that certificate of label approval is sufficient to trigger the Safe Harbor Doctrine, and the procedures that they have implemented for the approval process of that certificate of label approval do not comport with the requirements in Von Koenig or numerous other decisions that have examined this issue, also Hoffman versus Fifth Generation, and they've determined that the certificate of label approval process in and of itself is insufficient to trigger the Safe Harbor Doctrine. May I reserve the last? You have no time. You're in negative territory, but we'll give you two minutes for rebuttal. Thank you. Here it comes. Mr. Morris. I, too, have demonstratives, but a little smaller. Mine are smaller, too, and when you get there, mine says malt beverage on the box, on the side. Is that what Deere says as well? That's what mine says as well, yeah. But I'd have to read the fine print to figure out I'm buying beer and not a margarita, right? No, but I promise to address that, Your Honor. Peter Morrison, Your Honors, for Anheuser-Busch. I'd like to address both the Safe Harbor point and the reasonable consumer point, and I'd like to start with the Safe Harbor, if that's okay with the Court. It's by an express grant of congressional authority that the TTB has permitted the challenge conduct. The CELTEC Safe Harbor applies on that basis. What opposing counsel ignores is that it's not just the coal that's here. It's TTB ruling 2004, and let me explain. That's critical because in Hoffman and in Van Koning, in those cases, there wasn't an express agency ruling governing the conduct. Here we have that. So that fits within Van Koning, even if the Court were to adopt the Van Koning standard. And let me explain how we get there. 27 U.S.C. 205 is the labeling requirement. It's a matter of statute. It says that regulations will be prescribed by the Secretary of the Treasury, which the Secretary has done. 27 CFR, Section 7.22a1 and 7.23a both require the brand name, in this case Bud Light Lime, to be on the label. It's required as a matter of regulation. Safe Harbor protection. In addition, Section 7.23a, which is called misleading brand names, talks about the appropriate TTB officer making findings about those brand names. So what you have is a statute, the Secretary of the Treasury, promulgating regulations, and those regulations expressly say that what the TTB says goes. And the TTB has said exactly this. Except that the more specific problem here is about the carton, right? And as I understand, maybe I'm missing something in the regulation, but as I understood it was only in the frequently asked questions and a response to that that the carton is discussed. It's not part of the actual ruling. Isn't that right? It is not. And I can explain. And on the ruling, just before we get to that, the ruling promises a future rulemaking. And did that rulemaking ever take place? That rulemaking did not take place, Your Honor. May I address that question first and then come back to the frequently asked question? Thank you. Thank you, Your Honor. Judge Bybee, that rulemaking did not take place. However, that rule that was issued in 2004 is still the law of the land. And, in fact, Section 2004-1 expressly says that if you do not comply with that rule by September 1, 2004, the TTB takes the position that you violated the statute. And so that is still the law of the land, Your Honor. And just because there was no additional rulemaking does not mean that that rule was not made by an express grant of congressional authority because the enforcement provision in 2004-1 expressly ties it back to Section 205. Okay. Now to my question. Frequently asked question, what about malt beverage cases, cartons, and carriers? And then there's an answer to the question. There's no requirement. If you put it basically, I'm abbreviating, if you put it on the cans, you don't need to put it on the cart. Correct. But that's the frequently asked questions. It's not part of the TTB ruling 2004-1. So what status does the frequently asked question response have? It should have the same status as the ruling itself, and I'll explain why. And I invite the Court to look at the website, www.ttb.gov slash rulings. When you go on the website and you look at the rulings issued in 2004, there's only one, the one we're talking about. Right next to that, it says Q&A. It's right on the same line. Sure, it's in the same place. But why does that mean that it almost invites you to think it has lesser or different status because it's not the ruling? I would respectfully disagree with that, Your Honor, because if you look, if you go on that website and you look, the ruling was issued on April 7th of 2004. The Q&A was issued on April 7th of 2004. They were issued at the same time expressly because the TTB ---- But really, it would have been, your case would have been a whole lot stronger, though, if they had put it in the ruling. Your Honor, granted. And in terms of if we, you know, if we ever got into a question as to whether we had to Chevron deference or our deference, you're down the ladder. Our case would have been stronger had it been in the ruling. I agree. But the only express guidance from the agency that has exclusive jurisdiction to govern this industry is in that website posting. Nowhere else in the ruling does it talk expressly about packaging. Right. That's the reason for my question. So whether if we think that frequently asked questions don't have the same status as a formal ruling, that's not helpful to your argument. It's not helpful, Your Honor. But what I would come back to is that the rulemaking by the TTB is from an express statutory grant. And even, you know, and we sort of get into the issue of whether the preemption standard is the proper standard for a force of law. That comes from the von Koenig case, Your Honors. It is completely unclear whether the California Supreme Court would adopt von Koenig and the preemption standard. There's nothing in CELTEC that says that. But we don't really have to get into that here because all of the power that the TTB uses here to bless the activity taken by Anheuser-Busch is found in 2004-1 and the addendum. So there's not a debate about informality and formality. And, in fact, once you get past the ruling and the FAQ and you get to the COLAs, the cases that appellants cite with respect to dismissing the COLAs as binding authority, they turn on whether or not the court is satisfied that those courts had addressed the issue, whether the COLAs addressed whatever issue was in the case. So in the handmade cases, Hoffman says the COLAs are not enough because it's unclear to us whether the TTB addressed the word handmade when blessing the label. We don't have that problem here. We know the TTB blessed these labels for two reasons. One, they said so in the ruling 2004-1. Number two, when you look at the COLAs themselves granting approval to these labels, it expressly references ruling 2004-1. So you have express statutory authority. You have the regulation. You have the TTB. And on top of the TTB, you have the COLAs that expressly reference 2004-1. I'm not sure what other situation you could invent that more deserves the safe harbor under CELTEC, Your Honor. Before you run out of time, let's move to the label. Now, Your Honor has asked the question of what's the comparative product. That's the right question because light in and of itself doesn't have a definition. Well, sure it does. That's not a very, at least to me, helpful argument. Bud light is known for being less caloric than regular Budweiser. So I think, you know, so there is a reference that would cause a reasonable person to think that somewhere in here there might be something lower calorie. Your Honor, I don't disagree with what you just said. My point is that light standing on its own doesn't indicate 50 calories or 100 calories. No, but it's less than what? Yes, of course. So it's only on a relative basis that you can define light. And so the question is, Plaintiff's argument is that this, the Lime-A-Rita product, that the full-calorie counterpart to compare this to is a regular old Budweiser. As if I were going to go into the fridge and say— But, Counsel, it doesn't matter if it's Bud, Bud Light, or Bud Light Lime. They all have a lot less calories. That's his argument. I know that, Your Honor, but it's a false comparison. And the reason is no reasonable consumer would believe that this product would be comparable to a beer. What is the comparison, Counsel? You haven't answered the question. The comparative product of this would be this exact product made with Budweiser instead of Bud Light. Bud Light Lime. That's the comparable product. You start with the ingredients of the Bud Light Lime and the mix and the combination of that, and then you take the same mix and you make it with Budweiser instead. That's the comparable product. What they want you to believe, Your Honor, is a Lime-A-Rita product, a margarita-style beverage, can be compared to a regular old Budweiser. That's implausible on its face. That's not what he said. He said you could compare it to, again, he said you could compare it to a Bud, to a Bud Light, or to a Bud Light Lime, and all of those products have a lot fewer calories. That's his argument. They all do. I understand that's his argument, Your Honor. But you're saying it's not compared to a regular beer of any kind because it isn't purporting to be a regular beer. No one would drink this as a regular beer. Look at it. First of all, it's bright green in color. It says margarita with a twist. It has ice. Nobody pours a beer over ice. It's a margarita glass. It's not a beer stein. In fact, it says 8% alcohol by volume. A Budweiser has 5% alcohol by volume. Who in their right mind would think that the lighter version has more alcohol than the full-calorie version? Nobody. It's implausible. In answer to Judge Feibe's inquiry earlier, is Bud Light an ingredient of this product? The Lime-A-Rita is a combination of Bud Light Lime ingredients and essentially margarita mix ingredients. All this is saying is it doesn't say Lime-A-Rita Light. It says Bud Light Lime Lime-A-Rita with the Bud Light being part of the combination of mix, including whatever else they put in it to make it look and feel like a margarita. But that's where we started. The Bud Light Lime is an ingredient, so to speak, of Bud Light Lime-A-Rita. Correct. But that just seems to invite the comparison between Bud Light Lime and Bud Light Lime-A-Rita, and Bud Light Lime-A-Rita has a lot more calories. Your Honor, I don't think a reasonable consumer would believe that the full-calorie complement product to a Lime-A-Rita would be a regular old Budweiser. Counselor, again, you keep saying that, but really it's not helpful because it's not his argument. Well, Your Honor. It doesn't matter whether you compare it to Bud, Bud Light, or Bud Light Lime because they all have a lot fewer calories. Right, I understand that. But, Your Honor, the debate is over what the comparable product is. And your argument is that a beer is not, no kind of beer is a comparable product. That's correct. No beer is, because this is not marketed or shown on the label to be a beer. Correct. It's shown to be a margarita, weird margarita, but a margarita. Does the word beer appear on the label? It does not. Malt beverage does, and you promised you would get back to my question. It does appear, actually. Malt beverage appears on the label, but you have to read the fine print. You told me you were going to explain to me why I don't have to read the fine print. Well, because it doesn't say beer. It says malt beverage. That's a big distinction, Your Honor. What's the difference? I'm less experienced than my colleagues. What's the difference between a beer and a malt beverage? Well, no, I think the point is that if we wanted this to be a beer. Malt beverage is broader. Yeah, malt beverage is broader, correct. Does it have more alcohol content? I don't know the answer to that question, Your Honor. Are you going to tell me why it is, when I look at this label with the green beverage and the margarita glass and the ice cubes, and it says margarita with a twist on it. Yes. I took this to be that somebody would walk in and look at this box and realize they were buying a beer. After listening to some of Judge Graber's questions, I thought maybe I wouldn't. Maybe I'd think this thing is a margarita. It does say margarita with a twist. It turns out it's not a margarita at all. Of course, this isn't a tequila beverage. It is not. But I have to read, I think, the fine print to see the word malt, and you said no. In response to my very first question, you were going to explain to me why that's not the case. For the same reasons we've been discussing, Your Honor, because no characteristic on this label indicates that the comparable product here would be a beer. The margarita. Bud Light on it. Because let's not forget, Your Honor, that the TTV regulations require the brand name to be on it, and it's part of the ingredients. I'm just trying to give you an opportunity to answer my question if you want to. I'm trying.  I'm desperately trying to answer your question, Your Honor. My question is isn't it correct that I would need to read the fine print on this box to figure out that this thing's a beer, and you said no. That it is a beer or is not a beer. I'm sorry. That it's a beer rather than tequila, and you said no. Well, it does say Bud Light Lime on it, and so that's an ingredient. Okay. Does it have any tequila in it? It does not. Okay, so the only alcohol in there is Bud Light. Correct. Let me end with an analogy, because I think this is what is going on here, Your Honor. The comparison that plaintiffs are trying to make here is as if you took a tab of low-fat butter and just left it on a plate, and then you took the same tab of low-fat butter, and then you added all your cookie mix to it, and you made this big chocolate chip cookie, and it's made with low-fat butter. So what they're saying is that this big, huge cookie should have the exact same amount of calories as the low-fat butter, because that's an ingredient in here. And then you take this group, the cookie and the butter, and you compare it to the full-calorie counterpart, which is full-calorie butter. That's ridiculous on its face. I think it would be. So you're getting actually to my other question, and we're almost out of time. If I look at the label on one of these individual beverages, it says that they added the cookie dough. There's a lot of sugar in this. Correct. A lot of high-fructose syrup, I think, perhaps targeted at a different audience. But the box doesn't say that, does it? The box does not have the average analysis on it, Your Honor. So how do they know that? How does somebody who walks up in the grocery store to buy, or I don't know where you buy this, but, you know, see that it's got the cookie dough in it? Well, two things, Your Honor. It gets back to whether the reasonable consumer would believe that the comparable product is a regular Budweiser, as opposed to the same stuff being made with the butter. But your answer to that is that they wouldn't because you would… Because there's a picture of the cookie. Correct. Because there's a picture of the cookie on it. And let me just add one thing before I sit down, Your Honor. There is no allegation in the complaint that they ever saw the secondary packaging or bought this in multi-packs. Or what? Or bought this in multi-packs. Thank you. There's no allegation in the complaint, so I'm not sure how they can make that argument to begin with. Well, it has always baffled me, and this is not… Nobody needs to answer this, but it's always baffled me why the rule is that the carton doesn't have to contain the same information that the individual packages do. That would solve all these problems, but that isn't the way it's done. Thank you, Your Honor. Thank you. Thank you. First, to Judge Graber's point about whether if you're going to use a different margarita brand as the comparable product, on SER 11, we noted about three other comparable products. And you can see that the calories per ounce is… The Bud Light Lime-A-Rita actually contains more calories than two-thirds of the comparable margarita drinks, even. So if we took an average analysis of all the margaritas, it would still be much higher than that. So it's almost as if any comparable product that you use to compare it shows that the Bud Light Lime-A-Rita is not light at all. Counsel, what's the SER site again? SER 11. Thank you. And to the point about the TTB ruling, the district court agreed that the TTB ruling, 2004-1, did not have the force of law. First, it noted the equivocal language in the ruling itself, which said that this is only policy guidance, this is pending rulemaking. And so they didn't even take that into consideration as having the force of law. And in addition to that, the terms of the TTB 2004-1 itself were equivocal. They only said that the use of the term light tends not to be misleading. It didn't say that it was never misleading, as long as there was a statement of average analysis on the back. And in addition to that, there was no formality associated with that order to suggest in any way that that should be accorded Chevron deference and be sufficient to trigger the Safe Harbor Act. And the idea that it was simply the delegation from the FAAA to the Secretary of Treasury to the TTB, and that therefore the TTB can essentially do whatever it wants, is not accurate. And Hoffman v. Fifth Generation dealt with that. It said that the error in the analysis was that that's all the court looked at. They didn't look specifically as to what the TTB was doing and what procedures it utilized in order to determine whether those procedures and the result of those procedures, which was the certificate of label approvals, were sufficiently formal in process and in form to trigger the Safe Harbor Doctrine. It determined that it wasn't, and we agree. Thank you, counsel. Thank you. The case just argued is submitted, and we appreciate very much the arguments from both of you.
judges: Graber, Bybee, Christen